## THE STATE OF NEVADA, APPELLANT, v. STU'S BAIL BONDS, RESPONDENT.

No. 32865

December 28, 1999                                    991 P.2d 469

*Richard A. Gammick,* District Attorney, *David L. Watts-Vial,* Deputy District Attorney, Washoe County, for Appellant.

*Stu's Bail Bonds,* Incline Village, Respondent.[1]

---

[1]Respondent Stu's Bail Bonds is not represented by counsel on appeal. We note that business entities are not permitted to appear, or file documents, in proper person. *See* Salman v. Newell, 110 Nev. 1333, 885 P.2d 607 (1994). For this reason, this court ordered respondent to obtain counsel and cause counsel to file a notice of appearance with this court; respondent failed to comply with the order. Accordingly, on January 20, 1999, this court ordered that this matter stand submitted for decision based upon appellant's opening brief and appendix, and other documents on file.

Before MAUPIN, SHEARING and BECKER, JJ.

## OPINION

*Per Curiam:*

This appeal challenges an order of the district court granting respondent's motion to exonerate a bail bond. The district court exonerated the bail bond on the ground that a defendant who has fled to a foreign country and cannot be legally retrieved is ''detained by civil or military authorities'' within the purview of NRS 178.509. Having reviewed the record, we conclude that the district court erred.

On October 17, 1997, the criminal defendant in the underlying matter was charged with conspiracy to commit grand larceny. He pleaded guilty to the offense and was released on bail. When the defendant failed to appear at his sentencing hearing, the district court mailed a notice of intent to forfeit the bail bond to the surety, respondent Stu's Bail Bonds.

On June 3, 1998, Stu's Bail Bonds moved to exonerate the bail bond on the ground that the defendant had absconded to Mexico and could not be retrieved. Specifically, Stu's Bail Bonds alleged that a treaty between the United States and Mexico, and a concomitant Mexican policy against the extradition of its nationals,

prevented it from lawfully retrieving the defendant. Thus, Stu's Bail Bonds argued that the existence of the treaty was analogous to a civil detention of the defendant under NRS 178.509, and that the circumstances warranted an exoneration of the bail bond.

The district court granted the motion to exonerate the bail bond, concluding that the treaty made it impossible for Stu's Bail Bonds to legally restore the defendant to custody and that this impossibility satisfied the requirements of NRS 178.509(1)(b)(4).[2] We conclude that this reasoning was in error.

In Nevada, the exoneration of a bail bond is governed by statute:

> 1. The court shall not exonerate the surety before the expiration of 180 days after mailing the notice of intent to forfeit unless:
>
> (a) The defendant appears before the court . . . or
>
> (b) The surety submits an application for exoneration on the ground that the defendant is unable to appear because:
>
>> (1) He is dead;
>>
>> (2) He is ill;
>>
>> (3) He is insane; or
>>
>> (4) *He is being detained by civil or military authorities,* and the court . . . determines that one or more of the grounds described in this paragraph exist and that the surety did not in any way cause or aid the absence of the defendant.
>
> 2. *If the requirements of subsection 1 are met,* the court may exonerate the surety upon such terms as may be just.

NRS 178.509(1)-(2) (1991) (emphasis added).[3] Once the requirements of NRS 178.509(1) are met, the decision to grant exoneration of a bail bond rests within the discretion of the district court. *See* NRS 178.509(2); State of Nevada v. American Bankers Ins., 106 Nev. 880, 802 P.2d 1276 (1990).

This court reviews the construction of a statute de novo. County

---

[2]We note that appellant, the State of Nevada, originally disputed the applicability of the treaty to this case; however, it concedes on appeal that Stu's Bail Bonds cannot legally retrieve the defendant from Mexico.

[3]This appeal is subject to the provisions of NRS 178.509 prior to the 1999 amendment. *See* 1999 Nev. Stat., ch. 389, § 4, at 1846. The recent changes are not applicable to this appeal, which arose in 1998, but we observe that we would reach the same result under the amended statute.

of Clark v. Upchurch, 114 Nev. 749, 753, 961 P.2d 754, 757 (1998). The words of a statute should be given their plain meaning unless this violates the spirit of the act. McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986). Furthermore, a court should presume that the legislature intended to use words in their usual and natural meaning. Anthony Lee R., A Minor v. State, 113 Nev. 1406, 1414, 952 P.2d 1, 6 (1997) ("the plain meaning of a statute's words are presumed to reflect the legislature's intent").

The issue before this court is whether the district court correctly interpreted NRS 178.509(1)(b)(4) to include the situation posed by this appeal, where Stu's Bail Bonds was barred from lawfully retrieving a defendant who absconded to Mexico. The phrase "being detained by civil or military authorities" is not defined in NRS chapter 178, but its meaning is not difficult to decipher. The provision plainly speaks to circumstances where the defendant is in the custody or detention of some civil or military authority. More technically, the term "detain" is defined as "to hold or keep in or as if in custody" or "to restrain esp[ecially] from proceeding: STOP." *Webster's Ninth New Collegiate Dictionary* 345 (9th ed. 1983). Under this definition, we conclude that it is both inaccurate and unfounded to assert that the United States/Mexico treaty or the Mexican government is "detaining" the defendant. To the contrary, it appears that the defendant voluntarily chooses to remain in Mexico, most likely to avoid a criminal conviction in the United States. Although Stu's Bail Bonds essentially argued in the district court that the statute also applies where the *surety* is effectively "detained" from retrieving the defendant, the statute does not support this interpretation.

Stu's Bail Bonds also argued in the district court that it would be unfair to forfeit the bail bond when the surety, through no fault of its own, is legally prevented from retrieving the defendant. Although the state aptly countered that the very nature of a surety's business is to evaluate and assume the risk of a defendant's non-appearance, the district court appears to have been persuaded by Stu's Bail Bonds' argument. We agree that equity is one consideration in making discretionary decisions. However, NRS 178.509 does not provide that the lack of fault on a surety's part is a separate ground to exonerate a bail bond; instead, the statute embodies the legislative intent that the defendant's non-appearance may be excused only by death, illness, insanity, or

civil or military detention.[4] In the absence of a valid statutory ground under NRS 178.509(1), the district court lacked in the first instance the discretion to exonerate the bail bond. *See* NRS 178.509(2).

We are cognizant of the comparison drawn by the district court between a civil detention of the defendant and Stu's Bail Bonds' legal inability to forcibly remove the defendant from Mexico, but we decline to read into the plain meaning of NRS 178.509(1)(b)(4) such an expansive and liberal interpretation. Indeed, to allow such a construction would permit sureties to circumvent the specific requirements of NRS 178.509 as they exist. We instead leave to the legislature's sound discretion any decision to broaden Nevada's bail bond exoneration statute. Accordingly, the district court erred when it granted Stu's Bail Bonds' motion to exonerate the bail bond, and we hereby reverse the district court's order and remand this matter for further proceedings consistent with this opinion.

---

[4]The recent amendment to NRS 178.509 added deportation of the defendant as a fifth basis for exoneration. *See* 1999 Nev. Stat., ch. 389, § 4, at 1846.