130 Nev., Advance Opinion 8

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| GEORGE "EDDIE" LORTON, Petitioner, vs. LYNNETTE JONES, IN HER OFFICIAL CAPACITY AS RENO CITY CLERK; AND DAN BURK, IN HIS OFFICIAL CAPACITY AS THE WASHOE COUNTY REGISTRAR AND CHIEF ELECTIONS OFFICER OF WASHOE COUNTY, Respondents, and JESSICA SFERRAZZA AND DWIGHT DORTCH, IN THEIR CAPACITIES AS CANDIDATES FOR CERTAIN OFFICES, Real Parties in Interest. | No. 64194 |

FILED

FEB 20 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging the eligibility of real parties in interest to run in the 2014 Reno, Nevada, mayoral election.

*Petition granted.*

Hardy Law Group and Stephanie R. Rice, Reno,
for Petitioner.

John J. Kadlic, City Attorney, and Tracy L. Chase, Chief Deputy City Attorney, Reno,
for Respondent Lynette Jones.

Richard A. Gammick, District Attorney, and Herbert B. Kaplan, Deputy District Attorney, Washoe County,
for Respondent Dan Burk.

7/17/14: Corrected per letter to publishers. CJ

14-05556

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager and Daniel Bravo, Las Vegas,
for Real Party in Interest Jessica Sferrazza.

Gordon Silver and John P. Desmond, Brett J. Scolari, and Anjali D. Webster, Reno,
for Real Party in Interest Dwight Dortch.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Article 15, Section 3(2) of the Nevada Constitution prohibits an individual from being "elected to any state office or local governing body [if he or she] has served in that office, or at the expiration of his [or her] current term [he or she] will have served, 12 years or more." The parties do not dispute that the "local governing body" of the City of Reno, Nevada, is the city council, which is made up of six council members and the mayor of Reno. The issue we must decide is whether an individual who has served for 12 years or more as a council member is thereafter prohibited, by the limitations imposed under Article 15, Section 3(2), from running for mayor of Reno. Because the Reno City Charter makes the mayor a member of the city's "local governing body" for all purposes, we conclude that Article 15, Section 3(2) bars a term-limited council member from thereafter being elected mayor of Reno. We therefore grant the petition for a writ of mandamus.

## BACKGROUND

The City of Reno is a municipal corporation, organized and existing under the laws of the State of Nevada through a charter approved by the Legislature. Under the Reno City Charter, the legislative power of the city is vested in the city council, which consists of six city council members and the mayor. Reno City Charter, Art. II, § 2.010(1). The mayor and one of the city council members represent the city at large, while the remaining city council members each represent one of Reno's five wards. *See id.* § 2.010(3).

In this matter, real party in interest Jessica Sferrazza served on the Reno city council as the representative for Ward 3 for 12 years, ending in 2012. Real party in interest Dwight Dortch is currently serving on the Reno city council as the representative for Ward 4. When his term ends in 2014, he will also have served on the city council for 12 years. Both Sferrazza and Dortch have publicly expressed an intention to run for mayor of Reno in the 2014 election.

Petitioner George "Eddie" Lorton, a citizen of Reno who also intends to run for mayor, filed this writ petition seeking extraordinary relief preventing respondents Reno City Clerk Lynette Jones and Washoe County Registrar and Chief Elections Officer Dan Burk from taking the steps necessary to include either Sferrazza or Dortch on the 2014 ballot for the mayoral race. Lorton asserts that both Sferrazza and Dortch are ineligible to run for mayor under Article 15, Section 3(2) of the Nevada Constitution by virtue of their 12 years of service as city council members.

## DISCUSSION

Article 15, Section 3(2) of the Nevada Constitution provides, in full, that

> [n]o person may be elected to any state office or local governing body who has served in that office, or at the expiration of his [or her] current term if he [or she] is so serving will have served, 12 years or more, unless the permissible number of terms or duration of service is otherwise specified in this Constitution.

It is undisputed that, under this provision, an individual may not serve in the same state office or position on a local governing body for more than 12 years. *See Miller v. Burk*, 124 Nev. 579, 599, 188 P.3d 1112, 1125 (2008). The question here is, when a local governing body includes multiple positions, such as when a city council is made up of both city council members and the city's mayor, does Article 15, Section 3(2) also prevent an individual who has served for 12 years in one position on that local governing body from then serving additional terms in a different position on the same body?[1]

Before reaching that question, however, we must first determine whether a writ proceeding is an appropriate avenue for obtaining the relief that petitioner seeks.

### Writ relief

It is well established that writ relief is generally not available when the petitioner has a plain, speedy, and adequate remedy at law. *See* NRS 34.170; NRS 34.330; *Int'l Game Tech., Inc. v. Second Judicial Dist.*

---

[1]This court invited the Nevada League of Cities and Municipalities to participate in this original proceeding as amicus curiae, but the League of Cities declined our invitation.

*Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). But even when a legal remedy is available, this court may exercise its discretion to consider a writ petition when the petition presents a legal issue of statewide importance that needs clarification, and principles of judicial economy and public policy weigh in favor of considering the petition. *See Salaiscooper v. Eighth Judicial Dist. Court*, 117 Nev. 892, 901-02, 34 P.3d 509, 515-16 (2001) (indicating that, even when a legal remedy is available, this court may exercise its discretion to consider a writ petition that presents an issue of statewide importance when principles of sound judicial economy weigh in favor of consideration of the petition); *see also Walker v. Eighth Judicial Dist. Court*, 120 Nev. 815, 819, 101 P.3d 787, 790 (2004) (recognizing that this court may consider a writ petition when "an important issue of law needs clarification and public policy is served by this court's invocation of its original jurisdiction" (internal quotation marks omitted)).

In city elections, NRS 293C.186 allows a citizen to assert a challenge to a declared candidate on the ground that the candidate does not meet one of the qualifications for office, such as an age or residency requirement. NRS 293C.186(1). Here, Lorton contends that this statutory scheme is insufficient to allow a constitutional challenge to a declared candidate to be timely resolved and argues that Sferrazza and Dortch do not meet the constitutional requirements for the office of mayor because they have each served the maximum permissible number of years on the Reno city council.[2] Unlike a fact-based challenge to a candidate's age or

---

[2]Dortch, in his answer, agrees with Lorton that this issue should be addressed by way of this writ petition. Sferrazza does not address the propriety of writ relief in her answer.

residency, the facts in this matter are not in dispute, as there is no question that Sferrazza and Dortch will each have served for 12 years as council members. Instead, this petition presents a purely legal question of constitutional interpretation with regard to whether years of service as a council member counts against the number of years that a council member could serve as mayor.

Beyond determining whether Sferrazza and Dortch are eligible for the position of Reno mayor, resolution of this petition will also help define the parameters of Article 15, Section 3(2), so that future potential candidates and challengers will be able to understand the provision's effect and the district courts will be able to apply an established interpretation of the provision to any factual disputes that may arise with regard to a specific candidate's eligibility, not only in Reno, but in any city where the government is structured such that the mayor is a member of the city council. *See, e.g.*, Henderson City Charter, Art. II, § 2.010(1) (providing that the Henderson city council is made up of four council members and the mayor); Las Vegas City Charter, Art. II, § 2.010(1) (providing that the Las Vegas city council is made up of one council member from each of six wards and the mayor); North Las Vegas City Charter, Art. II, § 2.010(1) (providing that the North Las Vegas city council is made up of four council members and the mayor).

We conclude that this petition presents an issue of statewide importance for which judicial economy and public policy warrant consideration of the writ.[3] *See Walker*, 120 Nev. at 819, 101 P.3d at 790;

---

[3]As we conclude that the nature of the issue presented warrants consideration by way of this writ petition, we need not address Lorton's

*continued on next page...*

*Salaiscooper*, 117 Nev. at 901-02, 34 P.3d at 515-16; *see also Child v. Lomax*, 124 Nev. 600, 605-06, 188 P.3d 1103, 1107 (2008) (recognizing that a writ petition relating to the term-limits provisions applicable to members of the Nevada State Assembly presented a question of statewide significance). Additionally, as the issue presented by this petition concerns whether, as a matter of law, respondents are required to exclude Sferrazza and Dortch from the 2014 ballot materials and does not involve any question regarding the exercise of judicial functions, we conclude that mandamus, rather than prohibition, is the appropriate vehicle for seeking the relief requested by Lorton. *Compare* NRS 34.160 (providing that a writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station), *with* NRS 34.320 (explaining that the purpose of a writ of prohibition is to arrest "the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal"). Having determined that this writ petition is appropriate for review, we now turn to the substantive issue presented by the petition.

*Standard of review*

This court has not previously addressed the specific parameters of Article 15, Section 3(2) with regard to the members of a local governing body.[4] In the absence of any precedential authority, we

---

*...continued*

argument that the statutory scheme for challenging candidates provides an insufficient amount of time for resolution of this matter.

[4]The parties do not dispute that the Reno city council is a local governing body within the meaning of Article 15, Section 3(2), or that the mayor, as a member of the city council, is generally subject to the limitations imposed by that provision. Consequently, we do not address

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

must interpret the language of Article 15, Section 3(2) in order to determine whether that provision precludes a term-limited city council member from running for mayor.

"The rules of statutory construction apply to the interpretation of a constitutional provision." *We the People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1170 (2008). If a provision is clear and unambiguous, this court will not look beyond the language of the provision, *Miller*, 124 Nev. at 590, 188 P.3d at 1119-20, but will instead apply its plain meaning. *Kay v. Nunez*, 122 Nev. 1100, 1104, 146 P.3d 801, 804-05 (2006). A constitutional provision is ambiguous if "it is susceptible to two or more reasonable but inconsistent interpretations." *Miller*, 124 Nev. at 590, 188 P.3d at 1120 (internal quotation marks omitted). If a provision is ambiguous, this court "may look to the provision's history, public policy, and reason to determine what the voters intended." *Id.*

*Article 15, Section 3(2)*

Article 15, Section 3(2) states that "[n]o person may be elected to any state office or local governing body who has served in *that office*" for 12 years or more. Nev. Const. art. 15, § 3(2) (emphasis added). In this context, the word "*that*" is used to modify the general term "*office*" in order to refer to a particular office. William A. Sabin, *The Gregg Reference Manual* ¶ 308 (Elizabeth Haefele et al. eds., 11th ed. 2011). Specifically, "that office" appears to refer to both the term "state office" and the phrase

---

*...continued*

these issues in this opinion. *See In re Contested Election of Mallory*, 128 Nev. ___, ___ n.4, 282 P.3d 739, 742 n.4 (2012) (declining to consider whether a district attorney was subject to term limits based on the "local governing body" portion of Article 15, Section 3(2) because the parties had not raised arguments related to that portion of the term-limits provision).

"local governing body." *See* Nev. Const. art. 15, § 3(2). Put differently, the sentence may properly be read as saying that "[n]o person may be elected to any state office . . . who has served in that office" for 12 years or more, and that "[n]o person may be elected to any . . . local governing body who has served in that office" for 12 years or more. *See id.*

As to a state office, the effect of Article 15, Section 3(2) is clear insofar as the word "office" is used in both parts of the phrase. *See id.* So if a person has served in a particular state office for 12 years or more, that person may not serve any additional terms in that specific state office. *See id.*; *see also Miller*, 124 Nev. at 599, 188 P.3d at 1125. The effect of the portion of the provision referring to a "local governing body" is less clear because the words "office" and "local governing body" have different meanings, as an "office" is "[a] position of duty, trust, or authority, esp[ecially] one conferred by a governmental authority for a public purpose," *Black's Law Dictionary* 1190 (9th ed. 2009), while a "governing body" refers to "[a] group of . . . officers or persons having ultimate control." *Id.* at 764.

*Lorton's interpretation*

In his petition, Lorton argues that Article 15, Section 3(2) precludes an individual from serving for more than 12 years in any position or combination of positions on a single local governing body. Thus, he contends that because Sferrazza and Dortch will have served for 12 years on the Reno city council, as council members representing their respective wards, they cannot now serve additional terms on the council as mayor. Lorton asserts that this interpretation of Article 15, Section 3(2) is consistent with the purposes of the limitations provision—preventing individuals from becoming career politicians and restricting the power of lobbyists and special interest groups—because it prevents a person from

being elected to different positions within the same local governing body after he or she has served the maximum number of years.

The interpretation of the "local governing body" portion of the provision set forth by Lorton seems to require the phrase "that office" to be read as meaning the entire "local governing body," such that the provision would be understood to mean that "[n]o person may be elected to any . . . local governing body who has served [on] that [local governing body]" for 12 years or more. *See* Nev. Const. art. 15, § 3(2). Under this interpretation, when an individual has been a member of a local governing body for 12 years or more, that individual would no longer be eligible for election to that body in any capacity. *See id.*

The problem with this approach, however, is that interpreting the phrase "that office" to refer to an entire governing body assigns a meaning to the term "office" that is somewhat different from its usual and customary meaning. *See State v. Stu's Bail Bonds*, 115 Nev. 436, 439, 991 P.2d 469, 471 (1999) (explaining that this court should presume that words have "their usual and natural meaning"). In particular, as noted above, the term "office" generally refers to a single position, *Black's Law Dictionary* 1190, whereas a "governing body" is made up of a group of people. *Id.* at 764.

A different way to consider Lorton's approach would be to construe "that office" to refer to a particular office or position within a local governing body, but to separate "that office" from the antecedent "local governing body" language, and to then interpret "local governing body" itself to refer to the body as a whole. The effect of this view of Article 15, Section 3(2) would be that "[n]o person may be elected to any . . . local governing body who has served in [any] office [within that

local governing body]" for 12 years or more. But this approach is also problematic, as it would effectively require us to replace the phrase "that office" with "any office within that local governing body." Thus, taking either of these approaches, Lorton's interpretation does not fit squarely within the plain language of Article 15, Section 3(2).

*Sferrazza's and Dortch's interpretation*

In their answers to the petition, Sferrazza and Dortch each argue that Article 15, Section 3(2) only prevents an individual from serving in a particular "office" or "position" within a local governing body for more than 12 years.[5] Sferrazza and Dortch contend that interpreting the constitution to mean that a person cannot serve for more than 12 years in distinct offices within a local governing body renders the phrase "in that office" meaningless within the provision. Sferrazza and Dortch therefore assert that because the Reno city council members and the Reno mayor serve in different capacities, one who has served for 12 years as a

---

[5]In his answer, Dortch points to this court's statement in *Miller*, 124 Nev. at 599, 188 P.3d at 1125, that "Article 15, Section 3(2) plainly states that if a person has served, or at the conclusion of his or her current term will have served, 12 years or more in an office *or a position on* a local governing body, that person may not be reelected to that office *or position*" (emphases added), for the proposition that this court has already determined that the term limits apply only to individual positions within a local governing body. In *Miller*, however, this court did not specifically address the scope of the limitations provision with regard to whether the same limits apply to different positions within a single local governing body. Instead, the language cited by Dortch was contained in a general statement that term limits apply to state offices and local governing bodies. Moreover, the words "position on" were added before "a local governing body" without any express discussion as to the impact of that addition. As a result, we conclude that the language cited from *Miller* is not determinative of this writ petition.

city council member is not precluded from serving additional terms as mayor. Such an interpretation would cause Article 15, Section 3(2) to be understood to mean that "[n]o person may be elected to any . . . [office within a] local governing body who has served in that office" for 12 years or more.

This approach interprets "that office" to refer to a single, specific office, rather than to a group of offices. Nevertheless, as Article 15, Section 3(2) refers to a "local governing body," and not to an "office" on a local governing body, taking this approach would require us to read words into Article 15, Section 3(2) that are not expressly there. *See State Indus. Ins. Sys. v. Bokelman*, 113 Nev. 1116, 1122, 946 P.2d 179, 183 (1997) (providing that this court should not add to or alter language in a provision "to accomplish a purpose not on the face of the [provision] or apparent from permissible extrinsic aids such as legislative history or committee reports" (internal quotation marks omitted)).

In short, neither reading of Article 15, Section 3(2) set forth by the parties appears to be plainly correct based on the specific language of that provision. Thus, because these inconsistent interpretations are both reasonable, we conclude that Article 15, Section 3(2) is ambiguous. *See Miller*, 124 Nev. at 590, 188 P.3d at 1120 (explaining that a constitutional provision is ambiguous if "it is susceptible to two or more reasonable but inconsistent interpretations" (internal quotation marks omitted)). As a result, we look to the history of Article 15, Section 3(2), public policy, and reason to determine the meaning of the provision. *See Miller*, 124 Nev. at 590, 188 P.3d at 1120.

*Context within Article 15, Section 3(2)*

Before looking outside the language of the provision, we note that, although the text is ambiguous, the drafters' word choice may still

SUPREME COURT
OF
NEVADA

(O) 1947A

12

provide some indications as to the proper interpretation of the provision. On this point, it is significant that the drafters chose to use different terms in addressing how term limits apply in state and local elections by saying that a person may not be elected to a "state office or local governing body." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."). To illustrate, the drafters could have used "state governing body" and "local governing body" to indicate the bodies as a whole. Or they could have used "state office" and "local office" to refer to individual positions. Instead, they chose the distinct terms "state office" and "local governing body," which indicates that, at the state level, the drafters intended to prevent election to a specific office, but at the local level, the intent was to preclude continuing service on the governing body generally.[6] *See id.*

*Purpose and public policy*

Outside of the text, the purpose of the provision and public policy are relevant to our interpretation of Article 15, Section 3(2), and these considerations further support the conclusion that the limitations apply to the local governing body as a whole. Article 15, Section 3(2)'s

_____

[6]We are cognizant that the ballot questions used the terms "local public officer" and "local governing body members" to describe to whom Article 15, Section 3(2) would apply. Nevada Ballot Questions 1994, 1996, Nevada Secretary of State, Question No. 9. While this language arguably weighs in favor of the conclusion that the provision was intended to apply to individual positions within a local governing body, when viewed on balance with the remaining considerations discussed in this opinion, this language is not sufficient to support a conclusion different than the one we reach herein.

limitations provision was enacted by the voters through the ballot initiative process following its approval at the 1994 and 1996 elections. When the question was presented to voters, the proponents stated that its purpose was to "stop career politicians" by preventing them from holding office for an excessive number of terms. Nevada Ballot Questions 1994, 1996, Nevada Secretary of State, Question No. 9. The objective of limiting career politicians in order to promote a government of citizen representatives has been recognized as a legitimate state interest validating the imposition of term limits. *See Nev. Judges Ass'n v. Lau*, 112 Nev. 51, 56, 910 P.2d 898, 901-02 (1996) (citing *Legislature of Cal. v. Eu*, 816 P.2d 1309, 1325 (Cal. 1991)).

With regard to city council members, prohibiting reelection to the "local governing body" as a whole is in line with this goal, given that a local governing body may be made up of members who represent different wards, and thus arguably hold different offices, but whose roles are essentially the same. *See Mason's Manual of Legislative Procedure* § 52 (Nat'l Conference of State Legislatures 2010) ("In public bodies the equality of members is presumed."); *id.* § 120 ("The rights and duties of members of a legislative body are derived from and founded upon the absolute equality of the members."). In light of this structure, prohibiting a city council member who is term limited in one ward from being elected to what is essentially the same position in a different ward serves the purpose of preventing one person from holding the same political position for excessive years.

Sferrazza and Dortch argue that this purpose would not be undermined under their interpretation of Article 15, Section 3(2) because their interpretation would not allow a council member to serve for more

than 12 years by representing multiple wards. They say that this is so because the council members collectively serve in one office within the city council, while the mayor serves in a separate office on that body. Building on this foundation, Sferrazza's counsel asserted at oral argument that Article 15, Section 3(2) is "office based," in that it precludes reelection to the same office, as opposed to being "body based" and precluding reelection to the body as a whole. But as discussed above, Article 15, Section 3(2) does not say that a term-limited individual is precluded from reelection to "an office on a local governing body." Instead, it says that the person may not be reelected to the "local governing body."

In further evaluating the "office based" versus "body based" distinction, the term-limits provisions related to the Nevada Legislature provide helpful context. In particular, Article 4, Section 3(2) of the Nevada Constitution provides that "[n]o person may be elected or appointed as a member of the Assembly who has served in that Office . . . 12 years or more, *from any district of this State.*" (Emphasis added). Similarly, Article 4, Section 4(2) states that "[n]o person may be elected or appointed as a Senator who has served in that Office . . . 12 years or more, *from any district of this State.*" (Emphasis added). In these two provisions, "that office" refers to the office of "member of the Assembly" and the office of "Senator," respectively. In the absence of clarifying language, these provisions could have been interpreted to mean that a Senator representing a specific district could not serve for more than 12 years as the representative of that district. But the drafters included the phrase "from any district of this state" to preclude any question as to whether the provisions prevented reelection only to the specific seat or to the Assembly or Senate respectively. While Article 15,

Section 3(2) does not include the same language as Article 4, Section 3(2) and Article 4, Section 4(2), it does provide that the person may not be elected to the "local governing body," again indicating an intent to preclude election to the body as a whole, which is consistent with the term-limit provisions governing elections to the Legislature.

Based on these considerations, we conclude that the drafters intended to preclude reelection to the local governing body as a whole when a member has served on that body for 12 years or more in any capacity.[7] Thus, the question that remains is whether the mayor of Reno is sufficiently distinct from the city council to preclude application of Article 15, Section 3(2) to council members who may seek to run for mayor.

*Article 15, Section 11 and the Reno City Charter*

In construing constitutional provisions, we must read those provisions in harmony with each other whenever possible. *See Williams v. Clark Cnty. Dist. Attorney*, 118 Nev. 473, 485, 50 P.3d 536, 543 (2002) (recognizing this court's obligation to construe statutory provisions in harmony with each other when possible). Under Article 15, Section 11 of the Nevada Constitution, the provisions of a legally adopted charter control with regard to "the tenure of office or the dismissal from office" of any municipal officer or employee. Reading that provision in conjunction with Article 15, Section 3(2), this court must give effect to any charter

---

[7]Although not binding authority, we note that our decision herein is consistent with that issued by the Legislative Counsel Bureau in its December 15, 2011, opinion. Letter from Brenda J. Erdoes, Legislative Counsel, to Senator Ben Kieckhefer (December 15, 2011) (discussing the limitations provision of Article 15, Section 3 of the Nevada Constitution).

provisions that shed light on the extent to which the mayor is part of the local governing body, and thus, is subject to Article 15, Section 3(2)'s limitations. As a result, we must look to the Reno City Charter in order to determine whether, in Reno, a council member who has served for 12 years or more is precluded from being elected as the mayor of Reno.

Notably, the Reno City Charter states that the city council is Reno's governing body. *See* Reno City Charter, Art. I, § 1.014. And the charter expressly provides that the mayor is a member of the city council, *id.*, Art. II, § 2.010(1); *id.*, Art. III, § 3.010(1)(a), which in turn means that the mayor is a member of the local governing body. *See also id.*, Art. I, § 1.014. We recognize that the mayor is identified in the charter as a separate elective officer from the other six council members, *see id.* § 1.060(1)(a) and (b), and that the mayor has additional duties that do not fall on the other council members. *See, e.g., id.*, Art. II, § 2.040(2) (explaining that the mayor is the only council member who may call special meetings of the city council); *id.*, Art. III, § 3.010(1)(a) and (d) (providing that the mayor determines the order of business for and presides over city council meetings); *id.* § 3.010(1)(f) (requiring the mayor to take measures to preserve the public peace and suppress riots and other public disturbances). But these additional responsibilities do not divest the mayor of his or her full and equal membership on the city council. *See* 4 Eugene McQuillin, *The Law of Municipal Corporations* § 13:29 (3d ed. Rev. 2011) (noting that when a city charter designates a mayor as a member of a city council, the mayor for all intents and purposes serves as a member of that governing body); *see also Harrison v. Campbell*, 254 S.W. 438, 439 (Ark. 1923); *Griffin v. Messenger*, 86 N.W. 219, 219 (Iowa 1901); *Dafoe v. Harshaw*, 26 N.W. 879, 880 (Mich. 1886).

Furthermore, a review of the charter demonstrates that the mayor's primary function relates to his or her service on the city council. *Compare* Reno City Charter, Art. III, § 3.010(1)(a) (providing that the mayor presides over city council meetings and serves as a member of the council), *with* Sparks City Charter, Art. III, § 3.010(1)(a) (explaining that the mayor presides over the meetings of the city council but may not vote on any matter). The mayor of Reno is not the chief executive and administrative officer, as that role is filled by the city manager, *see* Reno City Charter, Art. III, § 3.020(1), and the mayor has no administrative duties. *See id.*, Art. III, § 3.010(1)(b). The mayor is the head of the city government for ceremonial purposes only. *Compare* Reno City Charter, Art. III, § 3.010(1)(c) (recognizing the mayor as the head of the Reno government for ceremonial purposes), *with* Sparks City Charter, Art. III, § 3.010(1)(b) (requiring the mayor to act as the head of the Sparks government for all purposes). While the Reno City Charter may assign additional duties to the Reno mayor, none of those added duties change the equality of all of the members of the city council or provide a basis for the unequal application of the limitations provision to all members of the "local governing body."

Thus, based on the provisions of the Reno City Charter, we conclude that the Reno mayor is a member of the "local governing body," subject to the same limitations that apply to the other city council members. Accordingly, because Sferrazza and Dortch each will have served on the Reno city council for 12 years by the end of the current term, they are ineligible to be elected as Reno's mayor. *See* Nev. Const. art. 15, §

SUPREME COURT
OF
NEVADA

(O) 1947A

18

3(2). We therefore grant the petition and direct the clerk of this court to issue a writ of mandamus requiring respondents to exclude Sferrazza and Dortch from the ballot materials for the 2014 Reno mayoral election.[8]

_____, J.
Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Douglas

_____, J.
Cherry

---

[8]In light of our decision herein, we deny Sferrazza's request for attorney fees pursuant to NRS 293C.186(6) without considering whether such a request may properly be presented in a writ petition.

PICKERING, J., concurring:

I join the majority but write separately to respond to the dissent, which focuses on dictionary definitions of "office" and "local governing body" but does not adequately consider the meaning these words have in the context of Article 15, Section 3 of the Nevada Constitution. *See United States v. Costello*, 666 F.3d 1040, 1044 (7th Cir. 2012) (Posner, J.) ("Dictionary definitions are acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings.").

The Nevada Constitution relies on municipal charters to establish standards for the tenure and dismissal of municipal officers and employees. Nev. Const. art. 15, § 11. Here, the Reno City Charter vests all of "[t]he legislative power of the City . . . in a City Council consisting of six Council Members and a Mayor." Reno City Charter, Art. II, § 2.010(1). To be mayor, a person must also be a member of the city council. *Id.*, Art. III, § 3.010(1)(a). The mayor has a legislative vote, equally with any other member of the city council. *Id.* § 3.010(1)(e). And the City Charter specifies that the mayor of Reno, unlike some other Nevada mayors, "[s]hall not have any administrative duties." *Id.* § 3.010(1)(b).

The dissent argues that there is a difference between the mayor and other city council members and, to be sure, there is: The mayor has all the duties, powers, and prerogatives of a city council member *plus* acts as the City's "ceremonial" leader, *id.* § 3.010(1)(c), and is charged with preserving public peace and "suppression of riots," *id.* § 3.010(1)(f). But does this turn the mayor into a separate officer for purposes of exercising powers of governance ceded by Reno's citizens to their city council? The

dissent argues that it does because a city council member who becomes a mayor takes on additional duties, making the mayor job a new office. What if the order of things was reversed and the person served first as mayor and then city council member? In that event, the mayor would continue doing the exact same legislative job, just minus his or her ceremonial and riot-suppression duties. Yet, as an equal holder of the substantive vote, the mayor→city council member could perpetuate his or her legislative policies for 24 years.

The dissent accepts that a person could not serve 72 years on the city council by moving from ward to ward and finally taking the at-large position. Why should this be different for someone who, judged by the power ceded to him or her, is a city council member with some ceremonial duties?

Whether we agree or disagree with the policies underlying term limits, the voters amended the Nevada Constitution to impose them. Nev. Const. art. 4, §§ 3(2) & 4(2); *id.*, art. 15, § 3(2). The contemporaneous understanding of the voters who passed the amendment is evident in the question they voted on: "Shall the Nevada Constitution be amended to establish term limits for state and local public officers in the executive and legislative branches of government?" Nevada Ballot Questions 1996, Nevada Secretary of State, Question 9(a). It is further evident in the explanation of the amendment that appeared on the ballot—the voters who passed the measure were told that it would limit the terms of "state officials and local governing body members" to set terms, mostly of 12 years. *Id.* The measure passed decisively, twice. As enacted, the amendments specifically address the two houses of the state Legislature: A person cannot evade the term limits provision by moving from district to

district. Nev. Const. art. 4, §§ 3(2) & 4(2). And they make no exception for the legislator who serves as speaker or in another legislative leadership role.

The point is to put time limits on the exercise of legislative or executive authority by elected politicians. This explains the reference to "local *governing* body." Nev. Const. art. 15, § 3(2) (emphasis added). Reno voters only ceded the power to *govern* the City—that is to say, exercise legislative authority over them—for a maximum of 12 years. Just as at the state level a member of the senate or assembly cannot perpetuate his or her tenure beyond 12 years by moving from district to district, a Reno city council member's authority is limited to 12 years. To me, the fact that the mayor exercises the exact legislative authority a city council member does—and has no administrative duties, Reno City Charter, Article III, § 3.010(1)(b)—answers the term-limits question. The addition of ceremonial and riot-suppression duties doesn't change the time limits on that exercise of ceded powers of civic governance.

_____, J.
Pickering

SAITTA, J., with whom PARRAGUIRRE, J., agrees, dissenting:

I would deny the petition for a writ of mandamus or prohibition. Although the majority frames the issue in terms of whether Article 15, Section 3(2) of the Nevada Constitution prohibits reelection to a local governing body as a whole, the effect of the court's conclusion is to find that the Reno mayor is essentially just a seventh city council member with a few minor additional responsibilities thrown in to his or her job description. This conclusion gives short shrift to both the language of the constitutional provision and the role of the Reno mayor. To reach its result, the court focuses on the "local governing body" language and discounts the phrase "that office." To me, it is the "that office" language that determines the provision's operation here.

The majority recognizes that its governing body-based interpretation necessitates construing "that office" to mean either "that local governing body" or "any office within that local governing body." Such a construction, however, is contrary to our well-established rules of construction, which charge this court with giving words their usual and natural meaning. *See State v. Stu's Bail Bonds*, 115 Nev. 436, 439, 991 P.2d 469, 471 (1999). *Black's Law Dictionary* defines "office" as "[a] *position* of duty, trust, or authority." 1190 (9th ed. 2009) (emphasis added). A "governing body," on the other hand, encompasses a group of officers. *See Black's Law Dictionary* 764 (defining "governing body" as "[a] group of . . . officers or persons having ultimate control"). Thus, an office cannot be equated to a governing body. Moreover, the drafters used the word "that" to modify the word "office," which demonstrates that the phrase "that office" refers to a specific office, not to any particular

governing body as a whole. *See* William A. Sabin, *The Gregg Reference Manual* ¶ 308 (Elizabeth Haefele et al. eds., 11th ed. 2011). Undeniably, the words "that office," as used in Article 15, Section 3(2), cannot be read as meaning "that local governing body" or "any office within that local governing body."

As used in Article 15, Section 3(2), "that office" identifies the specific position that the person at issue has held for 12 or more years. And for the phrase to have any significance within the term-limits provision, "that office" must be the office to which the person is ineligible for election. *See* Nev. Const. art. 15, § 3(2).

Here, the Reno City Charter explains that the Reno city council is made up of two separate elective offices: mayor and city council member. Reno City Charter, Art. I, § 1.060(1)(a), (b) (identifying the mayor as one elective office and the six city council members as a separate elective office); *see also id.*, Art. II, § 2.010(1) ("The legislative power of the City is vested in a City Council consisting of six Council Members *and* a Mayor." (emphasis added)). In this context, no one disputes that the six city council members all hold the same office, that of city councilman or city councilwoman.[1] Indeed, the charter does not distinguish them from one another and they are all granted the same duties and powers. *See generally id.*, Art. II. And, as discussed by the majority, the council

---

[1]Thus, while the city council members each represent a separate ward or the city at large, they are nonetheless all subject to the same term limits. *See* Reno City Charter, Art. I, § 1.060(1)(b). As a result, any concerns that my interpretation of Article 15, Section 3(2) of the Nevada Constitution would allow council members to avoid the application of term limits by shifting positions on the city council are unfounded.

members are all of equal rank. *See Mason's Manual of Legislative Procedure* § 52 (Nat'l Conference of State Legislatures 2010) ("In public bodies the equality of members is presumed."); *id.* § 120 ("The rights and duties of members of a legislative body are derived from and founded upon the absolute equality of the members.").

But the mayor is different. The mayor is elected to the office of mayor, not to the office of city council member. Bob Cashell is formally recognized as Mayor Cashell, not Councilman Cashell. Further, the mayor's responsibilities are set out distinctly in the part of the charter governing the executive department, Reno City Charter, Art. III, § 3.010(1), while the city council members' duties are included in the article governing the legislative department. *See generally id.*, Art. II. And unlike the council members, the mayor is the public figurehead of the Reno city government. *See id.*, Art. III, § 3.010(1)(c).

Quite significantly, the mayor alone is charged with protecting the public peace and suppressing riots, and section 3.010(1)(f) authorizes him or her to declare emergencies and empowers the mayor to take immediate protective actions such as establishing a curfew, barricading streets and roads, and redirecting funds for emergency use. *See* Reno Municipal Code §§ 8.34.050(a), 8.34.060. And finally, the mayor is responsible for appointing certain commission and committee members. *See* Reno City Charter, Art. IX, § 9.030(1) (providing that the mayor appoints the members of the Reno Civil Service Commission). These duties are among those that set the mayor apart from the six city council members, establishing the office of mayor as a separate and distinct office.

As a result, a person who has served for 12 years as a city council member has not served in the office of mayor, and thus, is not precluded by Article 15, Section 3(2) from holding "that office."

_____, J.
Saitta

I concur:

_____, J.
Parraguirre