**130 Nev., Advance Opinion 45**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ALL STAR BAIL BONDS, INC.; AND SAFETY NATIONAL CASUALTY CORP., Petitioners, vs. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JENNIFER P. TOGLIATTI, DISTRICT JUDGE, Respondents, and CLARK COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, Real Party in Interest. | No. 62866 <br><br> **FILED** <br><br> JUN 05 2014 <br><br> TRACIE K. LINDEMAN <br> CLERK OF SUPREME COURT <br> BY _____ <br> CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus challenging a district court order that denied a motion to exonerate a bail bond and entered judgment against the surety.

*Petition denied.*

Mayfield, Gruber & Sheets and Damian R. Sheets, Las Vegas, for Petitioners.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Bart Pace, Deputy District Attorney, Clark County, for Real Party in Interest.

_____

BEFORE HARDESTY, DOUGLAS and CHERRY, JJ.

14-18253

## OPINION

By the Court, CHERRY, J.:

NRS 178.509 allows the district court to exonerate a surety's bail bond obligations only in certain enumerated circumstances. One of those circumstances is when the defendant has been deported. NRS 178.509(1)(b)(5). In this original writ proceeding, we consider whether the defendant, who left the country voluntarily but was denied admission when he tried to return, was deported for purposes of NRS 178.509(1)(b)(5). We also consider whether common law contract defenses, such as impossibility, permit the district court to exonerate a bond. On both issues, we decide negatively. The defendant here was excluded, not deported. And the district court may not exonerate a bond without a statutory basis for doing so. Accordingly, we deny the surety's petition for extraordinary relief from the district court's order denying the motion for exoneration.

## FACTS

Real Party in Interest Clark County (the State) charged Rodrigo Rascon-Flores with multiple counts relating to fraudulent use of a credit card. He appeared at his arraignment and pleaded guilty in district court. The court continued sentencing for more than six months after the guilty plea. Petitioners All Star Bail Bonds, Inc., and Safety National Casualty Corporation (collectively, the surety) posted a bond for Rascon-Flores's release.[1]

---

[1]All Star Bail Bonds, Inc., posted the bond as an agent for Safety National Casualty Corp.

 

Sometime after the arraignment, Rascon-Flores traveled to Mexico. Rascon-Flores attempted to return to Las Vegas just days before his scheduled sentencing. At the border, he was stopped by U.S. Customs and Border Protection because the U.S. Arrival System indicated a "hit," presumably due to his charges in Las Vegas. Rascon-Flores admitted his arrest and charges, and admitted to behavior consistent with his guilty plea on those charges. Customs and Border Protection detained Rascon-Flores before deciding that he was inadmissible under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2012). Under the INA, federal law prohibits admitting an alien "who admits committing acts which constitute the essential elements of—(I) a crime involving moral turpitude . . . ." 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2012). Federal officers then revoked Rascon-Flores's nonimmigrant visa due to his inadmissibility. Officers verified his return to Mexico.

After Rascon-Flores missed his sentencing, the district court sent a notice of intent to forfeit bond to the surety. The surety filed a motion to exonerate the bond. The government opposed the motion and the surety replied. After a hearing, the district court denied the motion but stayed entry of judgment on the forfeiture for 30 days in order to give the surety time to petition for writ relief. The surety could not file for writ relief within 30 days, however, because it did not receive the hearing transcript and written order until after that time period had elapsed. The surety subsequently paid the forfeiture and now seeks relief in this court by extraordinary writ.

## DISCUSSION

"[T]he proper mode of review for orders entered in ancillary bail bond proceedings is by an original writ petition." *Int'l Fid. Ins. Co. ex rel. Blackjack Bonding, Inc. v. State*, 122 Nev. 39, 41, 126 P.3d 1133, 1133 (2006). "A writ of mandamus is available to compel the performance of an act that the law requires or to control a manifest abuse of discretion." *Id.* at 42, 126 P.3d at 1134. Therefore, in an original proceeding such as this one, we ask whether the district court manifestly abused its discretion in deciding whether to exonerate a bail bond. *Id.* at 43, 126 P.3d at 1135. We "will not disturb a district court's findings of fact unless they are clearly erroneous and not based on substantial evidence." *Id.* at 42, 126 P.3d at 1134-35. The district court's conclusions of law, such as its construction of statutes, are reviewed de novo. *See, e.g., Emerson v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 263 P.3d 224, 227 (2011).

The surety petitions us to order exoneration of the bond under the terms of NRS 178.509 because it asserts that Flores was deported. The surety also asks for exoneration under common law contract defenses.

### Deportation

NRS 178.509(1)(b)(5) permits a court to exonerate a bond upon application of the surety if the defendant has been deported. "'Deportation' is the removal of an alien out of the country, simply because his presence is deemed inconsistent with the public welfare, and without any punishment being imposed or contemplated, either under the laws of the country out of which he is sent, or under those of the country to which he is taken." *Fong Yue Ting v. United States*, 149 U.S. 698, 709 (1893). Accordingly, deportation requires not only a legal expulsion from the

country, *cf. Yamataya v. Fisher (The Japanese Immigrant Case)*, 189 U.S. 86, 100-01 (1903) (holding that due process principles apply to deportation), but also a crossing of the border, *United States v. Romo-Romo*, 246 F.3d 1272, 1276 (9th Cir. 2001) ("[A] person who never set foot outside this country was never deported . . . .").

A border stop is not a deportation. The U.S. Supreme Court has recognized that immigration law distinguishes between "exclusion" and "deportation." *See Landon v. Plasencia*, 459 U.S. 21, 25 (1982) ("The deportation hearing is the usual means of proceeding against an alien already physically in the United States, and the exclusion hearing is the usual means of proceeding against an alien outside the United States seeking admission."). Historically, detention at the border has not been considered entry into the country, *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958), and, thus, someone who is denied entry at the border generally cannot be considered deported. The law treats deportation and exclusion differently: "[T]hose with the status of deportable aliens are constitutionally entitled to rights in the deportation context that are inapplicable to exclusion proceedings." *Jean v. Nelson*, 727 F.2d 957, 972 (11th Cir. 1984) (en banc), *affirmed on other grounds*, 472 U.S. 846 (1985).

In this case, the federal government prevented Rascon-Flores from entering at the port of entry. He was excluded, not deported. *Cf. Landon*, 459 U.S. at 25, 28 (exclusion hearings occur at port of entry and apply to people who are entering). Therefore, NRS 178.509(1)(b)(5), permitting exoneration in the case of deportation, does not apply here.

*Common law contract defenses*

The surety argues that the bond should have been exonerated under common law contract defenses. We disagree.

"'A bail bond is a contract between the State and the surety of the accused.'" *All Star Bonding v. State*, 119 Nev. 47, 49, 62 P.3d 1124, 1125 (2003) (quoting *State v. Eighth Judicial Dist. Court*, 97 Nev. 34, 35, 623 P.2d 976, 976 (1981)). The statutes governing bail bonds are therefore incorporated into the agreement of the parties. *See Gilman v. Gilman*, 114 Nev. 416, 426, 956 P.2d 761, 767 (1998) (explaining that "[p]arties are presumed to contract with reference to existing statutes," and thus, "[a]pplicable statutes will generally be incorporated into the contract").

Because the statutes governing bail bonds are incorporated into the agreement of the parties, interpreting the language of the bail bond statutes is of utmost importance. NRS 178.509(1) states that "the court *shall not* exonerate the surety before the date of forfeiture prescribed in NRS 178.508 *unless*" one of the five conditions listed in the statute is present (emphases added). Use of the words "shall not" "imposes a prohibition against acting." NRS 0.025(1)(f). "[T]he Legislature's use of 'shall'. . . demonstrates its intent to prohibit judicial discretion . . . ." *Otak Nev., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 260 P.3d 408, 411 (2011). Thus, under a plain reading of the text, NRS 178.509(1) prohibits courts from exonerating a bond for any other reasons.

The legislative history shows that the original understanding of the "shall not" language was that it prevented courts from considering other reasons for exoneration. The "shall not" language was added by amendment in 1979. *See* 1979 Nev. Stat., ch. 649, §§ 2-3, at 1400-02. At a committee hearing on that amendment, Joe Reynolds, a representative of

SUPREME COURT
OF
NEVADA

(O) 1947A

four surety companies, opposed the bill. He indicated that the bill would not allow the court to exonerate a bond unless certain very strict criteria were met. Hearing on A.B. 808 Before the Assembly Commerce Comm., 60th Leg. (Nev., May 4, 1979). Jay MacIntosh, an insurance agent who worked with bail bonds, stated that the bill would make it more difficult to underwrite these kinds of policies because of the inability of the courts to set aside forfeiture in the event of just cause and other reasons. *Id.* Proponents of the bill understood the language as intended to remove courts' discretion because some bailbondsmen had made deals with some judges and not all bondsmen were being treated equally and fairly. *Id.* Proponents understood the proposed law as tightening up the present law because bail should be forfeited unless there are exonerating circumstances. *Id.*

Furthermore, our decision in *State v. Stu's Bail Bonds*, 115 Nev. 436, 440, 991 P.2d 469, 471 (1999), though not directly addressing a contract defense argument, supports the principle that the district court did not have discretion to exonerate without a statutory ground. In that case, it was argued that NRS 178.509(2), which states that "[i]f the requirements of subsection 1 are met, the court may exonerate the surety upon such terms as may be just," supported the notion that equitable grounds may be applied by a court. We held that a court has no discretion to consider equity before the statutory grounds in NRS 178.509(1) are met. *Stu's Bail Bonds*, 115 Nev. at 440, 991 P.2d at 471.

Here, the surety is not entitled to exoneration based on common law contract defenses because there is no such statutory ground for exoneration. Accordingly, we deny the petition.

_____, J.
Cherry

We concur:

_____, J.
Hardesty

_____, J.
Douglas